IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AIMEE MAE AUSTIN, | ) CASE NO. 1:22-CV-02003-BMB |
| Plaintiff, | ) |
| | ) JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| Defendant, | ) |
| | ) **REPORT AND RECOMMENDATION** |

**I. Introduction**

Plaintiff, Aimee Mae Austin ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before the Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On June 2, 2020, Claimant filed an application for SSI, alleging a disability onset date of May 29, 2013. (ECF No. 8, PageID #: 111). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On October 26, 2021, an ALJ held a video hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). The ALJ issued a written decision finding Claimant was not disabled on December 8, 2021. (*Id.* at PageID #: 108). The ALJ's

1

decision became final on September 6, 2022, when the Appeals Council declined further review. (*Id.* at PageID #52).

On November 5, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 14). Claimant asserts the following assignments of error:

> (1) The ALJ applied the wrong standard of review when adopting the RFC finding of the State Agency psychologists.
>
> (2) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Austin's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.
>
> (3) The ALJ committed harmful error when she added an incorrect definition regarding interactions in the RFC.

(ECF No. 10 at 1).

**III. Background**

    **A. Previous Application**

Claimant previously applied for SSI alleging a disability onset date of February 6, 2014. (ECF NO. 8, PageID #: 222). Following a hearing before an ALJ, the ALJ determined that Claimant was not under a disability from September 17, 2016, the date the application was filed, until November 7, 2018, the date of the decision. (*Id.* at PageID 236-37). In the 2018 ALJ decision, the ALJ found that Claimant had the residual functional capacity ("RFC"):

> to perform light work as defined by 20 CFR 416.967(b) except that the claimant may frequently balance, occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant may frequently reach with the bilateral upper extremities; the claimant may occasionally be exposed to humidity, and extremes of temperature, but must avoid all exposure to workplace hazards, such as unprotected heights; the claimant is limited to the performance of simple, routine, repetitive tasks, undertaken in a work setting free of production rate pace [ as is found in assembly line work], which setting is routine, in that it contemplates no more than occasional changes

>in workplace tasks or duties, easily explained and/or demonstrated in advance of gradual integration into the job's processes, which setting requires no more than occasional and superficial [defined as precluding group, tandem, or collaborative tasks, as well as tasks involving sales, arbitration, negotiation, conflict resolution, confrontation, the management of, direction of, or persuasion of, others] interaction with co-workers, supervisors or the public.

(ECF NO. 8, PageID #: 228). Claimant's request for review of the 2018 ALJ decision was denied by the Appeals Council on August 19, 2019. (*Id.* at PageID #: 243). Claimant filed a complaint challenging the decision and, on April 19, 2021, the district court affirmed the Commissioner's decision. (*Id.* at PageID #: 258-74).

**B. Relevant Medical Evidence**

In addressing Claimant's second application at issue here, the ALJ summarized Claimant's health records and symptoms:

>The record reflects that the claimant had a history of several conditions predating the application date in June 2020, including depression, anxiety, bipolar disorder, asthma, fibromyalgia, and lumbar disc degeneration for which she underwent anterior lumbar interbody fusion surgery (C2F; C10F). In a June 2020 pain management exam, the claimant reported adequate pain relief with medication and 60% pain relief with a recent caudal injection (C3F/34). She had mild lumbar spine discomfort and limited range of motion (C3F/36). The claimant used a wheelchair although there was no indication that it was prescribed (C3F/36). She had normal sensation, reflexes, and motor function (C3F/36). She was prescribed Percocet (C3F/37).
>
>The following month, the claimant had lumbar spine tenderness and severe spasticity with bilateral leg weakness but normal sensation and reflexes (C3F/31). She used a cane to ambulate (C3F/31). Through the summer and into the fall, the claimant remained on Percocet and she received caudal injections (C3F). She used a cane and she had back pain, but no ongoing findings of weakness (C3F). In October, she demonstrated a normal gait (C3F/11).
>
>Additionally, the claimant had ongoing mental health treatment (C7F). She reported reoccurring nightmares but she was sleeping well (C7F/28). She had circumstantial but logical thoughts with euthymic mood, intact memory, appropriate concentration, and good judgment and insight (C7F/29, 30). Through the summer and fall, she had consistent treatment and relatively stable exam findings although she had impaired memory at times (C7F). Into 2021, the claimant remained in pain management with Percocet and injections (C4F; C5F;

C6F). She had painful and limited motion in her lumbar spine along with use of a cane (C4F; C5F; C6F). However, she exhibited normal sensation, reflexes, and motor function with only occasional weakness (C4F; C5F; C6F).

In January 2021, the claimant had a mental health check-up, where she appeared mildly depressed with a mildly restricted affect (C7F/7). She had cooperative and polite behavior with coherent speech (C7F/8). She exhibited intact memory, appropriate concentration, logical and coherent thoughts, and good judgment and insight (C7F/9). In April, the claimant said she was forgetting to take her medications regularly but she was feeling much better (C7F/1). She displayed poor judgment and impaired memory (C7F/3). Nevertheless, she had intact concentration, fair insight, euthymic mood, and logical thoughts (C7F/3).

The following month, the claimant began treatment with a new provider (C11F/20). She reported anger, anxiety, crying spells, and decreased attention span (C11F/21-27). On exam, she had appropriate grooming, euthymic mood, normal speech, and intact judgment, insight, and cognitive functioning (C11F/33). The claimant had variable symptoms but generally stable exam findings into the summer (C11F/1-17).

In June 2021, the claimant went to the emergency department with left foot pain and numbness after she tripped and heard a pop in her foot (C17F/1). She had generalized tenderness to her left fifth metatarsal and swelling, but she was neurologically intact (C17F/6). X-rays revealed a fifth metatarsal fracture and she was discharged home with Percocet and Ibuprofen (C17F/6).

Through the summer, the claimant remained in pain management where she received injections and several medications, including Savella, Flexeril, and Percocet (C12F). She had pain and she used a cane but she displayed normal sensation, reflexes, and motor function (C12F). She demonstrated lumbar muscle weakness and positive straight leg raising at times (e.g., C12F/9, 20). The claimant noted that medication significantly reduced her pain and reported 80% pain relief from SI injections and that the treatment helped her do more of what she wants to do. (C12F).

The claimant was hospitalized with dyspnea and chest pain in August (C15F/5). She was tachycardic with mild leukocytosis initially (C15F/5). Imaging showed bilateral pulmonary nodules and a small area of consolidation in the posterior lung base (C15F/5). Her oxygen saturation was in the low 90s and she was admitted (C15F/5). The claimant improved with treatment and she was discharged with medication (C15F/5). Later in August, the claimant returned to the hospital for three days and she was treated for bronchiolitis (C16F). She had shortness of breath and pleuritic chest pain (C16F/16). She improved and was discharged in stable condition (C16F/4, 5).

In a post-discharge follow-up, the claimant said her pulmonary symptoms had

>resolved (C18F/5). She displayed normal pulmonary effort and breath sounds (C18F/6). Later in August, the claimant returned to the hospital with right-sided chest pain, coughing, and shortness of breath (C17F/17). She had clear breath sounds with no wheezes, although she was slightly tachycardic (C17F/22). She was using a walking boot on her left foot (C17F/22). She had 99% oxygenation and an EKG was unremarkable (C17F/24). Chest x-rays showed no acute consolidation and minimal left basilar atelectasis (C17F/24). She was discharged in stable condition (C17F/24).
>
>The claimant was fitted for orthotics in September (C14F). She had slight valgus on exam but normal strength and range of motion (C14F/5). Later that month, the claimant had an exam for her lung nodules (C19F/1). She denied having any shortness of breath or other respiratory symptoms (C19F/1). She had clear lungs with no wheezing or use of accessory muscles (C19F/5). Imaging established low concern for malignancy and the claimant was to continue using inhalers and DuoNeb as needed (C19F/5).

(ECF No. 8, PageID #: 116-18.

### C. Opinion Evidence at Issue

The opinions of the state agency psychological consultants are at issue on appeal. The state agency psychological consultants "found no material changes in the claimant's condition since the previous decision and adopted the residual functional capacity from such decision." (*Id.* at PageID 118). The ALJ found "the assessments of the psychological consultants persuasive because the record showed that the claimant's mental condition was relatively stable since the previous decision and the mental limitations of the previous residual functional capacity remained appropriate." (*Id.*).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since June 2, 2020, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: degenerative disc disease status post laminectomy and fusion surgery, post-laminectomy syndrome, lumbar radiculopathy, fibromyalgia, history of pneumonia and bronchiolitis, mild asthma, non-displaced fracture of the fifth metatarsal, bilateral pes planus, obesity, pulmonary nodules, bipolar

    disorder, borderline personality disorder, anxiety disorder, and posttraumatic stress disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance and occasionally stoop, kneel, crouch, and crawl. The claimant can frequently reach with the bilateral upper extremities. She can occasionally be exposed to humidity and temperature extremes. She should avoid exposure to dangerous moving machinery or unprotected heights. She can perform simple routine tasks in a setting free of fast-paced production requirements or strict production quotas with no more than occasional changes in workplace tasks or duties which are easily explained and/or demonstrated in advance or gradual implementation. She can have occasional interaction with supervisors, coworkers, and the general public. The claimant should not perform work tasks that involve group, tandem, or collaborative tasks. She can do no sales arbitration, negotiation, conflict resolution, or the management, direction, or persuasion of others. She should not be responsible for the health and safety of others. The claimant must use a cane for ambulation.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 17, 1988 and was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 2, 2020, the date the application was filed (20 CFR 416.920(g)).

(*Id.* at PageID #: 113-16, 119-20).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the

7

national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal: 1) whether the ALJ applied the wrong standard of review to the state agency psychologists' opinions; 2) whether the ALJ failed to properly apply SSR 16-3p in considering Claimant's symptoms; and 3) whether the ALJ added an incorrect definition regarding social interactions to the RFC.

**1. The ALJ did not apply the wrong standard of review to the state agency psychologists' opinions.**

Claimant first argues that the state agency psychologists' opinions were based on the 2018 ALJ determination and the ALJ here failed to consider any of the new medical evidence as required by *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). (ECF No. 10 at 9-10). The Commissioner argues that the ALJ properly considered the new evidence because she adopted an RFC that differed from the prior assessment and "[w]hile the ALJ's deviations from the previous RFC assessment primarily pertained to [Claimant's] physical limitations . . . the ALJ also made minor changes to the mental RFC, rewording some limitations and adding that [Claimant] should not be responsible for the health and safety of others." (ECF No. 12 at 9). Claimant replies that the ALJ failed to offer this claim a fresh look as required by *Earley* and this Court has previously determined that "adopting the findings of the prior ALJ

8

casts a pall over the entire hearing." (ECF No. 14 at 1 (citing *DiLauro v. Comm'r of Soc. Sec.*, No. 5:19cv2691, 2021 WL 1175415, at *3-4 (N.D. Ohio Mar. 29, 2021)).

In *Earley*, the Sixth Circuit rejected the idea that an ALJ is always bound by a previous disability determination and recognized that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." 893 F.3d at 932. *DiLauro* applied *Earley* to a situation where an ALJ concluded he was bound by the findings of a previous ALJ because "no new and material evidence exist[ed] to justify not adopting the residual functional capacity from the previously adjudicated period." 2021 WL 1175415 at *2-3. The *DiLauro* court concluded remand was proper because the ALJ did not give a fresh look to substantial new evidence as required by *Earley* but rather placed "great weight" on the opinions of state medical consultants which adopted the prior ALJ's decision. *Id.* at *3-4.

Here, however, the ALJ concluded there was "new and material evidence pertaining to the unadjudicated period that change[d] the prior residual functional capacity." (ECF No. 8 at PageID #: 111). The ALJ provided a detailed account of Claimant's medical records from June 2020 until September 2021. (*Id.* at PageID #: 116-18). She then found "the assessments of the psychological consultants persuasive because the record showed that the claimant's mental condition was relatively stable since the previous decision and the mental limitations of the previous [RFC] remained appropriate." (*Id.* at PageID 118). While the state agency psychologists relied on the RFC set out in the 2018 ALJ decision, they found such appropriate only after review of Claimant's new medical evidence. (*Id.* at PageID #: 252, 277). As this Court has previously recognized "[t]he fact that the medical reviewers adopted the findings and

9

the ALJ found their opinions persuasive does not mean that the current ALJ adopted the prior ALJ's decision." *Anderson v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-01471-DAR, 2022 WL 6258349, at *7 (N.D. Ohio July 11, 2022), *report and recommendation adopted sub nom. Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188 (N.D. Ohio Sept. 29, 2022). Because the ALJ considered the new evidence before concluding the mental limitations from the 2018 ALJ decision remained appropriate, she did not apply the wrong standard of review. *See Earley*, 893 F.3d at 934 ("Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making."). Therefore, the Court concludes that Claimant's argument is without merit.

### 2. The ALJ properly applied SSR 16-3p in considering Claimant's symptoms.

Claimant next argues that the ALJ did not properly apply the criteria of SSR 16-3p and disregarded Claimant's limitations in forming the RFC. (ECF No. 10 at 18). Claimant asserts that "the ALJ failed to articulate any supportable rationale for her finding that [Claimant's] statements and the evidence . . . were not supportive of the fact that she would be precluded from all types of work" and the decision "failed to contain specific reasons for the finding on credibility, was not supported by the evidence in the case record and was not sufficiently specific to make clear to the individual and to any subsequent reviews the weight the ALJ gave to Austin and/or the remainder of the evidence in this matter." (*Id.* at 19-20). The Commissioner argues the ALJ's decision reflects an adequate assessment of Claimant's subjective symptom complaints and Claimant's belief that the ALJ should have weighed the evidence differently does not support remand. (ECF No. 12 at 12).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviated pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects

a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

> Here, the ALJ summarized Claimant's subjective complaints:
>
> The claimant alleged that she was disabled due to a variety of conditions, including fibromyalgia, chronic pain syndrome, glaucoma, gastroesophageal reflux disease, neuropathy, borderline personality disorder, and anxiety (ClE/2). She noted that she was 5'2" and 210 pounds (C3E/2). She stated that her impairments forced her to stop working (ClE/2). The claimant asserted that her back pain made her unable to bend, stand, and sit for long periods (C4E/1). She said she could lift only five pounds (C4E/1). She reported that she could not be in public places alone (C4E/1). She further claimed that she had difficulty concentrating and completing tasks (C4E/6). The claimant described having poor ability to handle stress and changes in her routine (C4E/7). She stated that she used a cane to ambulate daily and wheelchairs for long distances (C4E/7).

(ECF No. 8 at PageID #: 116). After reviewing the medical record, the ALJ found Claimant's alleged symptoms and limitations "only partially consistent with the evidence." (*Id.* at PageID #: 119). She provided justification for this finding:

> The record showed that the claimant had ongoing low back pain and limited motion, with use of a cane. She also fractured her toe and she used orthotics to support her feet. However, she demonstrated generally intact reflexes, sensation, and motor function. In pain management exams, the claimant noted that she had significant pain relief with treatment. Moreover, the claimant had only intermittent complaints of pulmonary symptoms and her condition appeared generally managed with treatment. Such facts suggest that the claimant was able to perform the reduced range of sedentary work described in the residual functional capacity.
>
> In terms of the claimant's mental conditions, she had ongoing mood and anxiety symptoms, for which she received treatment. With treatment, her condition appeared generally stable. Indeed, exams showed that she had generally euthymic mood, intact cognition, logical thoughts, and adequate insight. Such findings are

12

> consistent with performing simple tasks in the relatively static and socially limited environment of the residual functional capacity.

(*Id.*)

Consistent with SSR 16-3p, the ALJ discussed Claimant's subjective complaints to medical professionals, the treatment she received, and the corresponding relief she experienced. (*See id.* at PageID #: 117-18). She noted that in June 2020, Claimant "reported adequate pain relief with medication and 60% pain relief with a recent caudal injection" and Claimant remained on Percocet and received caudal injections through the summer and fall for lumbar spine tenderness and severe spasticity with bilateral leg weakness. (*Id.* at PageID #: 117). While Claimant reported having reoccurring nightmares, she "was sleeping well" and had "consistent treatment and relatively stable exam findings." (*Id.*) In April 2021, Claimant reported feeling "much better" despite forgetting to take her medications. (*Id.*). Claimant "reported 80% pain relief from SI injections and that treatment helped her do more of what she wants to do" in summer 2021. (*Id.* at PageID #: 117-18).

Elsewhere in the decision, the ALJ also discussed Claimant's daily activities, another SSR 16-3p factor. The ALJ noted that Claimant watched television, spoke on the phone with others, and handled her own finances. (*Id.* at PageID #: 115). She also was able to understand and follow medical advice, spend time with friends, go shopping, play video games, and cook occasionally. (*Id.* at PageID #:114-15).

The ALJ pointed to specific evidence in the record when discounting Claimant's subjective complaints. She noted that while Claimant had ongoing back pain and limited motion, "she demonstrated generally intact reflexes, sensation, and motor function" and had "significant pain relief with treatment." (*Id.* at PageID #: 119). As to Claimant's mental conditions, the ALJ noted that "[w]ith treatment, her condition appeared generally stable" and "exams showed that

13

she had generally euthymic mood, intact cognition, logical thoughts, and adequate insight." (*Id.*). Thus, the Court agrees with the Commissioner that the ALJ's assessment was supported by substantial evidence. To the extent Claimant's lengthy recitation of the record is meant to show that an alternative finding is warranted, such is insufficient to disturb the ALJ's finding, which the Court must defer to "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 3. The ALJ did not commit harmful error in defining the limitations of Claimant's social interactions.

Claimant finally argues that the ALJ committed harmful error by providing "an unsupported definition/limitation to Austin's ability to perform superficial interactions" when she "adopted the decision of the prior ALJ and defined superficial as 'no sales arbitration, negotiation, conflict resolution, or the management, direction or persuasion of others. She would not be responsible for the health and safety of others.'" (ECF No. 10 at 20-21). The Commissioner argues that the "ALJ's RFC finding never mentions 'superficial interaction,' but rather includes several limitations—supported by the record—as to the quality of interaction [Claimant] could handle." (ECF No. 12 at 13). Even if the "RFC limitations can be characterized as a clarification or explanation of 'superficial interaction,'" the Commissioner argues Claimant failed to explain "why the ALJ's definition was an inappropriate means of addressing the quality of interaction she thought [Claimant] capable of performing." (*Id.*) Further, the Commissioner argues Claimant has waived this argument because "the ALJ's hypothetical questions to the vocational expert used the same wording as contained in the RFC, and Plaintiff's attorney failed to object to or offer a contrary definition at that time." (*Id.* at 14 (citations omitted)).

14

The Court agrees with the Commissioner that Claimant has waived this argument. "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Robinson v. Comm'r of Soc. Sec.*, No. 1:15-cv-509, 2016 WL 3085762, at *9 (W.D. Mich. June 2, 2016) (collecting cases). At the hearing, the ALJ presented the VE with a hypothetical using language identical to that ultimately adopted in the RFC limiting Claimant to "occasional interaction with supervisors, coworkers, and the general public" and indicating she was unable to "perform work tasks that involve group, tandem, or collaborative tasks, or sales, arbitration, negotiation, conflict resolution, management, or the management direction, or persuasion of others" and "should not be responsible for the health and safety of others." (ECF No. 8, PageID #: 213-14). The ALJ gave Claimant's counsel an opportunity to question the VE and she declined. (*Id.* at PageID #: 217). Thus, because Claimant did not further question the VE regarding her social limitations, she has waived any objection. *See Robinson*, 2016 WL 3085762 at *9 ("Plaintiff's objections were not preserved at the administrative level. The ALJ asked Plaintiff's counsel whether he had any questions for the VE, and counsel responded he did not.").

Even if not waived, the Court finds this argument to be without merit. Claimant seems to argue that including the phrase "superficial interactions" would further limit the RFC. (ECF. No. 10 at 21). However, "[t]he term 'superficial interaction' is not defined under the Dictionary of Occupational Titles ('DOT') or Selected Characteristics of Occupations ('SCO'). And there have been contrary findings as to whether the 'plain meaning' of the term requires further definition." *Betz v. Comm'r of Soc. Sec.*, No. 3:21-cv-2408, 2022 WL 17717496, at *10 (N.D. Ohio Nov. 8, 2022) (citations omitted) (collecting cases). As courts have found the phrase ambiguous and

15

interpreted it differently, the Court does not believe the ALJ erred in omitting the phrase and instead listing Claimant's specific limitations supported by the record. *See id.* ("Although the ALJ must connect the RFC limitations to the evidence and build a logical bridge between the two, this does not require that the ALJ provide explicit reasoning for why he defined superficial the way he did. Rather, the ALJ needed to explain why he determined that Betz was limited to superficial contact *as he defined it*, and it is sufficient that the record not be clearly contrary to that definition.").

Considering the record as a whole, substantial evidence supports the ALJ's decision. The Court therefore will not disturb her findings.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: 9/18/2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).